# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## Civil Action No: 3:10-CV-94

| | |
|---|---|
| **TLV CORPORATION,** <br><br> Plaintiff, <br><br> v. <br><br> **DESSELLE-MAGGARD CORPORATION,** <br><br> Defendant. | **PRELIMINARY INJUNCTION** |

**THIS MATTER** came before the undersigned Judge on Plaintiff TLV Corporation's ("TLV") Motion for Preliminary Injunction seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The court having considered the Verified Complaint, the various affidavits submitted by the parties, the parties' legal memoranda, and the arguments of counsel for the parties at a hearing on March 12, 2010, and having found that Plaintiff has a likelihood of success on the merits and may suffer irreparable harm; and having further found that the balance of equities tips in favor of entry of a preliminary injunction and that a preliminary injunction is in the public interest and necessary to preserve the status quo during the pendency of this litigation;

**IT IS HEREBY ORDERED THAT** Defendant Desselle-Maggard Corporation is hereby immediately restrained and enjoined from the following:

(1)  Using, possessing, or accessing any TM5 TrapMan® hardware units or HASPs;

(2)  Using or accessing any TrapManager® software;

(3) Using, copying, disclosing, transmitting (to entities other than Plaintiff), reviewing, distributing, accepting, or in any way otherwise misappropriating, any and all surveys and related data generated using TLV's diagnostic equipment, software, or technology, including any surveys or other data generated through use of any TM5 TrapMan® hardware units, TrapManager® software, or HASPs;

    (a) Provided nothing in this Paragraph 3 shall enjoin receipt by, access to, and use by Defendant of raw input data from a customer or prospective customer, in whatever form and however maintained by the customer or prospective customer, including any such raw input data that may have been inputted into and is retrievable from any TLV diagnostic equipment, software, or technology pertaining to such customer's or prospective customer's steam system or steam traps, but not including survey and related data generated by any TLV diagnostic equipment, software, or technology, and which raw input data consists of the following input categories in the customer database to the extent such raw data exists: (1) area; (2) trap ID; (3) model name; (4) trap type; (5) manufacturer of trap; (6) connection type; (7) connection size; (8) pressure; (9) installed date; (10) months in use; (11) inspection frequency; (12) hours per day used; (13) days per year used; (14) steam cost; (15) trap location (including any operating unit and zone); (16) application; (17) priority; (18) elevation; (19) orientation; and (20) any applicable customer map number for where the trap is installed.

**IT IS FURTHER ORDERED THAT** Defendant refrain from accepting orders for TLV products or representing to customers that it is a distributor of TLV products.

**IT IS FURTHER ORDERED THAT** Defendant immediately return to TLV all TLV TM5 TrapMan® hardware units and related accessories, TrapManager® software, HASPs and copies thereof, including any TrapManager® surveys generated using TLV's diagnostic equipment, software, or technology. Provided that regarding any copies of TLV software and related electronic data remaining in Defendant's possession, the parties agree that any such copies of TLV software and related electronic data will be deleted from Defendant's servers or other computer equipment no later than March 24, 2010, thus leaving no copies of TLV software and related electronic data in Defendant's possession, but Defendant shall make a copy of such TLV software and related electronic data on a disk or disks and deliver such disk or disks to its counsel of record in this case, which counsel of record shall retain such disk or disks until conclusion of this case, agreement by the parties, or further order of this Court.

**IT IS FURTHER ORDERED THAT** Plaintiff post security in the principal amount of Ten Thousand U.S. Dollars ($10,000.00) for the payment of such costs and damages as may be incurred or suffered by Defendant if it is later found that it was wrongfully enjoined or restrained by this Preliminary Injunction.

Defendant is hereby notified of its obligation to preserve evidence relevant to this litigation. Any deletion, alteration or destruction of information or material in violation of this Order can result in Defendant being held in contempt. Further, such action can result, without limitation, in an order from this Court that any information or material deleted, altered or destroyed would have supported the allegations against Defendant in the Verified Complaint.

This preliminary injunction shall remain in effect until entry of final judgment or until otherwise ordered.

Signed: March 23, 2010

*Graham C. Mullen*
Graham C. Mullen
United States District Judge