**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:10-CV-94**

| | |
|---|---|
| **TLV CORPORATION,** <br><br> Plaintiff, <br><br> v. <br><br> **DESSELLE-MAGGARD CORPORATION,** <br><br> Defendant. | **CONSENT INJUNCTION AND FINAL JUDGMENT** |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the consent of the parties hereto, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, subject to the contempt powers of this Court, as follows:

**IT IS HEREBY ORDERED THAT** the Preliminary Injunction entered against the Defendant in this action on March 23, 2010 be vacated and of no effect. Furthermore, the bond posted by Plaintiff under the Preliminary Injunction is hereby released. The Clerk of Court is directed to cancel such bond and return it to counsel for the Plaintiff.

**IT IS FURTHER ORDERED THAT** Defendant is hereby restrained and enjoined, directly or indirectly, from the following:

    (1)    Using, possessing, or accessing any model TrapMan® hardware units or HASPs;

    (2)    Using or accessing any TrapManager® software;

    (3)    Using, copying, disclosing, transmitting (to entities other than Plaintiff), reviewing, distributing, knowingly accepting or in any way otherwise misappropriating, any and all surveys and related data generated using TLV's diagnostic equipment, software, or technology, including any surveys or other

data generated through use of any model TrapMan® hardware units, TrapManager® software, or HASPs;

(a) Provided nothing in this Paragraph 3 shall enjoin receipt by, access to, and use by Defendant of raw input data from a customer or prospective customer, in whatever form and however maintained by the customer or prospective customer, including any such raw input data that may have been inputted into and is retrievable from any TLV diagnostic equipment, software, or technology pertaining to such customer's or prospective customer's steam system or steam traps, but not including survey and related data generated by any TLV diagnostic equipment, software, or technology, and which raw input data consists of the following input categories in the customer database to the extent such raw data exists: (1) area; (2) trap ID; (3) model name; (4) trap type; (5) manufacturer of trap; (6) connection type; (7) connection size; (8) pressure; (9) installed date; (10) months in use; (11) inspection frequency; (12) hours per day used; (13) days per year used; (14) steam cost; (15) trap location (including any operating unit and zone); (16) application; (17) priority; (18) elevation; (19) orientation; and (20) any applicable customer map number for where the trap is installed.

(b) Survey and related data generated by any TLV diagnostic equipment, software, or technology does not include numbers of traps that need to be replaced, generic or common descriptions of traps and their conditions, or any information about traps included in paragraph 3(a) (1)-(20) above.

(c) This paragraph (3) shall not apply to survey data communicated as part of a process of soliciting bids or proposals to Defendant by a third party customer or potential customer (i) if the survey data or third party is not under any confidentiality restrictions, or (ii) if the survey data has been communicated to Defendant or any of Defendant's competitors (except authorized TLV distributors or service providers) with TLV's approval.

(4) Using, copying, disclosing, transmitting, reviewing, distributing, knowingly accepting, or in any way misappropriating, any and all of TLV's trade secrets or other information not generally known to the public which Defendant learned from TLV with respect to TLV products. For purposes of this paragraph (4), "trade secret" shall include, but is not limited to, TLV's pricing, all TLV technical reports, application data, assessments, product specifications, and similar technical information marked "Confidential" or "Proprietary" by TLV. For purposes of this paragraph (4), "trade secret" shall not include materials covered under Paragraph 3 above, information or materials that are or become generally known in the business, or which are reversed engineered or independently determined by Defendant without violating any confidentiality restrictions. For purposes of this paragraph (4), Defendant's knowledge of TLV's pricing learned from TLV shall not be included in the definition of "trade secret" after February 24, 2015.

**IT IS FURTHER ORDERED THAT** Defendant refrain from activities that would suggest a current association between TLV and Defendant, including (1) representing to customers that it is a distributor of TLV products; (2) quoting TLV products; (3) accepting any

orders for TLV products and filling any orders for TLV products with non-TLV products (a) without informing the customers that the supplied products are not manufactured by TLV and (b) receiving confirmation of acceptance from the customers for non-TLV products.

**IT IS FURTHER ORDERED THAT** Defendant immediately return to TLV, or destroy and certify destruction in writing, or certify that the item is no longer in Defendant's possession in writing, all models of TrapMan® hardware units and related accessories, TrapManager® software and copies thereof, and HASPs, including any TrapManager® surveys generated using TLV's diagnostic equipment, software, or technology and any TLV trade secrets, including any documents reflecting trade secrets, in its possession, custody, or control. The preceding sentence shall not include any documents in Defendant's possession, custody, or control that constitute prior purchase orders, prior quotes, or documentation used to prepare such purchase orders or quotes. Any disk or disks containing copies of TLV software and related electronic data delivered to Defendant's counsel by Defendant under the Preliminary Injunction shall be destroyed immediately.

**IT IS FURTHER ORDERED THAT** prior and as a condition precedent to seeking any type of enforcement or remedies concerning this Consent Injunction through the contempt powers or any other power of this Court, Plaintiff must provide Defendant with written notice of any failure to comply with this Consent Injunction by the Defendant. Such notice shall include reasonably-specific information, to the extent known by the Plaintiff, about the circumstances of the alleged failure to comply with this Consent Injunction, including for example the date, location, and persons or entities allegedly involved. Such notice shall be sent by certified mail, return receipt requested, to:

Desselle-Maggard Corporation
Attn: Mr. Joseph Jobe
Post Office Drawer 86630
Baton Rouge, LA 70879-6630

with a copies to:

| | |
|---|---|
| Robinson Bradshaw & Hinson<br>Attn: Julian H. Wright, Jr.<br>101 North Tryon Street<br>Suite 1900<br>Charlotte, NC 28246 | Kaye Scholer LLP<br>Attn: Nancy E. Fuchs<br>425 Park Avenue<br>New York, NY 10022 |

or to such other address as Defendant may request from time to time. Upon receipt of such notice, Defendant shall have eight (8) business days from date of receipt of such notice reasonably to cure any alleged failure to comply with this Consent Injunction. Only if Defendant fails reasonably to cure any alleged failure to comply with this Consent Injunction will Plaintiff be able to seek or obtain any type of enforcement or remedies from this Court. Nothing in this Order shall preclude Plaintiff from seeking or obtaining any type of enforcement or remedies from this Court for any failure by Defendant to comply with this Consent Injunction, provided that Plaintiff adheres to the requirements of this paragraph.

**IT IS FURTHER ORDERED THAT** all parties shall be subject to the jurisdiction of this Court in connection with the enforcement of any provision of this Consent Injunction.

**IT IS FURTHER AGREED AND ORDERED THAT** this Consent Injunction shall be binding upon the parties hereto and their successors and assigns, including any successors by merger, and their officers, agents, and employees.

**IT IS FURTHER AGREED AND ORDERED THAT** all parties waive any right to appeal the terms of this Consent Injunction.

**IT IS FURTHER AGREED AND ORDERED THAT** Defendant expressly waives any requirement of a bond for the enforcement of this Consent Injunction.

The parties acknowledge, and the Court finds, that the Court has jurisdiction to enter this Consent Injunction. The parties acknowledge, and the Court finds, that this Consent Injunction is intended to be the final order disposing of all issues in this matter, except as additional orders or rulings may be necessary to enforce this Consent Injunction as provided above. Accordingly, any other claims raised in this litigation are rendered moot, hereby dismissed with prejudice, and the Court considers this action concluded, and the Court will take no further action in this matter unless requested to do so by any party to enforce this Consent Injunction.

This Consent Injunction shall remain in effect, with respect to any information described in paragraphs (1)-(4) hereof until such time as the Court enters an Order that such information (i) has become generally known in the marketplace, or (ii) no longer derives actual or potential commercial value from not being generally known or readily ascertainable through independent development or lawful reverse engineering by persons who can obtain economic value from its disclosure or use, or (iii) is no longer the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The parties, or their successors and assigns, also may modify or terminate this Consent Injunction by written agreement.

Signed: February 14, 2011

Graham C. Mullen
United States District Judge

APPROVED AND AGREED TO:

Respectfully submitted,

| | |
|---|---|
| s/ Anthony T. Lathrop | s/ Julian H. Wright, Jr. |
| Anthony T. Lathrop | Julian H. Wright, Jr. |
| NC Bar No. 015941 | N.C. Bar No. 19345 |
| tonylathrop@mvalaw.com | jwright@rbh.com |
| J. Mark Wilson | A. Ward McKeithen |
| NC Bar No. 25763 | N.C. Bar No. 5063 |
| markwilson@mvalaw.com | amckeithen@rbh.com |
| Renee D.K. Miller | Andrew T. Miller |
| NC Bar No. 34105 | N.C. Bar No. 39920 |
| reneemiller@mvalaw.com | amiller@rbh.com |
| | ROBINSON BRADSHAW & HINSON, P.A. |
| | 101 North Tryon Street, Suite 1900 |
| MOORE & VAN ALLEN, PLLC | Charlotte, North Carolina 28246 |
| 100 North Tryon Street, Suite 4700 | (704) 377-2536 |
| Charlotte, NC 28202 | |
| (704) 331-1000 | *Attorneys for Defendant* |

*Attorneys for Plaintiff*